**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

In re:

Wilbur Porter, II,
            Case No. 23-42843
            Chapter 13
            Honorable Maria L. Oxholm

   Debtor.

_____/

## OPINION OVERRULING TRUSTEE'S OBJECTION TO DEBTOR'S POST-CONFIRMATION PLAN MODIFICATION

### I. INTRODUCTION

The matter is before the Court on Debtor Wilbur Porter, II's ("Debtor") Chapter 13 Plan Modification ("Plan Modification") requesting both a reduction in the amount of the plan payment and in the time for the payments to be made on the plan. [ECF No. 28]. The chapter 13 trustee Tammy L. Terry ("Trustee") objected to the Plan Modification.

There are three issues. The first issue is whether 11 U.S.C. § 1329(a)(2) permits the Debtor to reduce the time of the applicable commitment period in 11 U.S.C. § 1325(b). After reviewing the statutory language and the cases cited by the parties, the Court concludes that § 1325(b) does not apply to plan modifications. The second issue is whether Debtor's Plan Modification relitigates an issue that was or could have been litigated at confirmation. The Court holds that the Debtor's Plan Modification does not relitigate an issue that was or could have been litigated at confirmation, and thus, does not violate 11 U.S.C. § 1327. The third issue is whether the Debtor's Plan Modification complies with the requirements of § 11 U.S.C. 1325(a)(3). The Court holds that the Debtor's proposed Plan Modification is feasible and filed in good faith, and otherwise complies with § 1325(a)(3).

## II. JURISDICTION

The Court has jurisdiction to determine this matter pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(2)(A), (L) and (O).

## III. FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are not in dispute. The Debtor, who is 56 years old, filed the bankruptcy petition on March 29, 2023. [ECF No. 1]. On the same day, the Debtor filed Official Bankruptcy Form 122C-1, the Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period. [ECF No. 7]. This form determines the applicable commitment period pursuant to § 1325(b)(4). It requires debtors to "(F)ill in the average monthly income that you received from all sources, derived during the 6 full months before you file this bankruptcy case." [ECF No. 7, pg. 1]. It indicates that pre-petition, the Debtor's current monthly income was $5,994.00. [ECF No. 7, pg. 2]. The current monthly income ("CMI") for the year was $71,928.00 and the median income in Michigan for a household of two was $69,789.00. Thus, the Debtor was an above median income debtor with a 5-year commitment period.

The Debtor also filed Official Form 122C-2, the Chapter 13 Calculation of your Disposable Income on March 29, 2023. [ECF No. 8]. This calculation uses the current monthly income amount from Form 122C-1 of $5,994.00 and reduces it by the expenses allowed under IRS expense allowances, additional expense deductions and deductions for debt payment. In this case, the total adjustments are $5,662.58. [ECF No. 8, pgs. 6-7]. This calculation shows that the Debtor's post-petition monthly disposable income is $371.42. [ECF No. 8].

With the petition, the Debtor filed Schedules I and J. [ECF No. 1]. Schedule I works to "(e)stimate monthly income as of the date you file this form." [ECF No. 1, pg. 34]. Debtor's combined monthly income is $3,514.00, a reduction from his prepetition income on Form 122C-1. [ECF No. 1, pg. 35]. Schedule J estimates "your expenses as of your bankruptcy filing date." [ECF

2

No. 1, pg. 37]. Here, Debtor's expenses are $2,768.00 [ECF No 1, pg. 38]. Again, a number lower than the permissible deductions on Form 122C-1. Using these numbers, the Debtor's monthly net income is $746.00. [ECF No. 1, pg. 38].

The Chapter 13 Plan [ECF No. 2] was confirmed August 26, 2023, and provided for monthly plan payments of $746.00 for 60 months, in addition to requiring the Debtor to remit 100% of future income tax refunds. [ECF No. 26]. In addition, the liquidation analysis demonstrates that the amount available to unsecured creditors is -0-. [ECF No. 2, pg. 8].

On October 7, 2024, the Debtor filed Debtor's Chapter 13 Plan Modification requesting a reduction in the amount of the plan payment from $746.00 to $100.00 per month. [ECF No. 28]. The modification also requested a reduction in the plan length from 60 to 36 months. Attached to the Plan Modification is a liquidation analysis that again demonstrates the amount available to unsecured creditors is -0-. [ECF No. 28, pg. 6].

On the same day the Debtor filed amended schedules I and J. [ECF No. 29]. Schedule I demonstrates a combined monthly income of $2,964.39. Schedule J shows a new housing expense of $845.00 per month, total expenses of $2,863.00, and monthly net income of $101.39.

It is significant that according to the amended schedules Debtor's income is reduced by $549.61 each month. Additionally, despite the new housing expense of $845.00, overall expenses increased by only $95.00 per month. (Pre-confirmation schedule J expenses were $2,768.00 per month.) [ECF No. 2].

The request for the modification is based on a change in the Debtor's financial circumstances. In an Unsworn Declaration Under Penalty of Perjury Pursuant to 28 U.S.C. § 1746 ("Unsworn Declaration") the Debtor states, "(O)n August 7, 2024, I was involuntarily terminated

3

by Public Storage. Public Storage gave me until August 10, 2024, to vacate the apartment." [ECF No. 41]. Debtor's "job at Public Storage included a free apartment on the premises." *Id*.

The Trustee objected to the Plan Modification on October 17, 2024. She argues that a reduction in the amount of the plan payment and time of the plan is not warranted under the circumstances. [ECF No. 30].

At the first hearing on February 3, 2025, the Court ordered a supplement to explain Debtor's change in employment, and to provide an affidavit. At the adjourned hearing on February 27, 2025, the Trustee withdrew the objection regarding the reduction to the plan payments and agreed to monthly plan payments of $100.00 per month from $746.00 per month. [ECF Nos. 43 and 48]. The Trustee maintained the objection regarding the reduction in the time of the plan. The Trustee argued that Debtor did not provide a reason for a reduction in the plan length as required by 11 U.S.C. § 1329(b)(1) and 11 U.S.C. § 1325(a)(3).

Per the Trustee, the Debtor is current in his monthly payments on the Chapter 13 Plan. [ECF No. 48, ¶ 4]. A review of the Trustee records shows the Debtor is 96.86% paid into the plan. The last payment was made March 14, 2025. Further, the claims register shows 7 filed unsecured claims, totaling $38,386.12. The unsecured creditors have received $11,678.07 per the Trustee records, about 30% of the amount claimed.[1]

---

[1] On May 8, 2025, the Court again reviewed the Trustee's records. They show Debtor is 89.95% paid into the plan with the last payment of $46.15 being paid on April 25, 2025. Unsecured creditors have received $15,246.30. or about 49% of the amount claimed.

# IV. DISCUSSION

## a. Principles of Statutory Construction

The first step in statutory construction "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Fullenkamp v. Veneman*, 383 F.3d 478, 481 (6th Cir. 2004) (internal quotation and citation omitted). "[L]egislative intent should be divined first and foremost from the plain language of the statute. If the text of the statute may be read unambiguously and reasonably, our inquiry is at an end." *Chrysler Corp. v. Commissioner*, 436 F.3d 644, 654 (6th Cir. 2006). *See also In re MCP No. 185,* 124 F.4th 993, 1001 (6th Cir. 2025) (internal citations omitted) ("Statutory construction must begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.") and *Saginaw Chippewa Indian Tribe of Michigan v. Blue Cross Blue Shield of Michigan,* 32 F.4th 548, 557 (6th Cir. 2022) (same). Furthermore, "we must construe a statute as a whole and, in so doing, we must strive to interpret provisions so that other provisions in the statute are not rendered inconsistent, superfluous, or meaningless." *Chrysler Corp.,* 436 F.3d at 654-55. "Only when our reading results in ambiguity or leads to an unreasonable result, may we look to the legislative history." *Id.* An ambiguity arises when there are two plausible readings of a statute. *Brilliance Audio, Inc. v. Haights Cross Communications, Inc.*, 474 F.3d 365, 371-72 (6th Cir. 2007).

## b. Section 1325(b) Does Not Apply to Plan Modifications

After reviewing the statutory language and the cases cited by the parties, the Court concludes that § 1325(b) does not apply to plan modifications. The Court holds that (1) the express language of § 1329 allows debtors to reduce the time to make plan payments; (2) § 1329 lacks reference to § 1325(b); and (3) the express language of § 1325(b) does not apply to plan

modifications—therefore, it is not made applicable to plan modifications by reference to it in § 1325(a). The Court is further persuaded by the analysis and reasoning provided by *In re McCully,* 398 B.R. 590 (Bankr. N.D. Ohio 2008) and *In re Davis*, 439 B.R. 863 (Bankr. N.D. Ill. 2010).

Therefore, the Court is joining the majority view that recognizes that § 1325(b) does not apply to plan modifications. *See In re Davis*, 439 B.R. at 867; *In re McCully,* 398 B.R. at 592–94; *Sunahara v. Burchards (In re Sunahara),* 326 B.R. 768 (9th Cir. BAP 2005) (sets forth majority's view); *Forbes v. Forbes (In re Forbes),* 215 B.R. 183, 188 (8th Cir. 1997); *In re White,* 411 B.R. 268, 272–73 (Bankr. W.D.N.C.2008); *In re Kidd,* 374 B.R. 277, 282 (Bankr. D. Kan.2007); and *In re Ewers,* 366 B.R. 139, 141–42 (Bankr. D. Nev.2007)). The Court additionally holds that no absurdity results from the inapplicability of § 1325(b) to plan modifications, as the good faith requirement of §1325(a) continues to apply to modifications of confirmed plans. In fact, the Court's reading of the relevant provisions is consistent with the legislative history.

### (i) Parties' Arguments

First, the Debtor argues that the express language of § 1329(a)(2) permits an extension or reduction of the time for plan payment. The modification is limited only by § 1329(b)(1) that states, "Sections 1322(a), 1322(b) and 1323(c) and the requirements of 1325(a) of this title apply to any modifications under subsection (a) of this section." § 1329(b)(1). Debtor further argues that § 1329 allows a modification to shorten the plan length when post confirmation events demonstrate a debtor is no longer above the median income, relying on *In re McNully*. The disposable income requirements and applicable commitment period are contained in § 1325(b). In relying on *In re Davis, 439* B.R. at 863, Debtor contends that § 1329 incorporates § 1325(a), not § 1325(b), evidencing Congressional intent to exclude § 1325(b) from application to plan modifications. Lastly, the Debtor continues that "[b]y its terms, § 1325(b) comes into effect only when a party

with standing objects to confirmation of the plan," quoting *In re Davis*, 439 B.R. at 866. [ECF No. 43, pg. 7].

In response, the Trustee maintains that the applicable commitment period in § 1325(b) applies to § 1329 plan modifications pursuant to § 1325(a), citing *In re King*, 439 B.R. 129 (Bankr. SD Ill. 2010); *In re Groner*, no. 313-00157, 2016 Bankr. LEXIS 1978 (U.S. Bankr. M.D. Tenn. May 11, 2016); and *In re Keller* 329 B.R. 697 (Bankr. E.D. Cal. 2005). Section 1325(b)(4)(B) provides the minimum commitment period unless the debtor pays the unsecured creditors in full. The Trustee points to *In re King* wherein the court explains, "there would be little to no point in requiring an above median income debtor to propose a five-year plan for the purposes of confirmation if that same debtor could simply turn around and modify her plan to provide for a lesser term." *In re King*, 439 B.R. at 135.

In reply, Debtor explains that § 1325(a) incorporates § 1325(b) only when confirming, not modifying, a plan. [ECF No. 52, pg. 1]. Section 1325(b) does not apply to plan modifications. *See In re Davis*, 439 B.R. at 866 and *In re Swain*, 509 B.R. 22 (Bankr. E.D. Va 2014). The Debtor further maintains that the Trustee's cited cases, *In re King* and *In re Groner* do not support her position. Finally, Debtor asserts that while he had above median income six months prior to commencement of the filing of the petition, there is no dispute that Debtor is now below median income. Section 1329 authorizes a reduction of the time of the plan under these circumstances.

<u>(ii) The Express Language of § 1329 Allows Debtors to<br>Reduce the Time to Make Plan Payments</u>

Post-confirmation plan modifications are governed by § 1329. This section provides in relevant part,

**(a)** At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--

7

**...**
**(2)** extend or <u>*reduce the time for such payments;*</u>
**...**
**(b)(1)** <u>*Sections 1322(a), 1322(b), and 1323(c) of this title and the requirements of*</u>
<u>*section 1325(a) of this title apply to any modification under subsection (a) of this*</u>
<u>*section.*</u>

§ 1329 (emphasis added). Section 1329(a)(2) is only limited by subsection (b)(1), which sets forth

the code sections applicable to any plan modifications.

Accordingly, subsection (a)(2) expressly allows a debtor to extend or reduce the time for

plan payments, provided the debtor complies with subsection (b)(1). There is no ambiguity in this

language.

### (iii) Section 1329 Lacks Reference to § 1325(b)

As already stated, § 1329(a)(2) is only limited by subsection (b)(1), which sets forth the

code sections applicable to any plan modifications. These are §§ 1322(a), 1322(b), 1323(c) and

1325(a). "When construing § 1329, courts have looked to the plain meaning of the language and

determined that § 1329 lacks a reference to § 1325(b)." *In re McCully*, 398 B.R. at 593 (citing

*Hill,* 386 B.R. 670, 675 (Bankr.S.D.Ohio, 2008)). Thus, "[b]y specifying only these four

provisions, § 1329(b) implicitly excludes other provisions, under the maxim *expressio unius est*

*exclusio alterius." In re Davis*, 439 B.R. at 867 (citing *TRW v. Andrews,* 534 U.S. 19, 28, 122 S.Ct.

441, 151 L.Ed.2d 339 (2001) (applying the maxim to reject an unstated exception to a statute of

limitations)). See also *In re McCully*, 398 B.R. at 593 (quoting *In re Sunahara,* 326 B.R. 768, 781

(9th Cir. BAP 2005), "[s]ection 1329 expressly applies certain specific Code sections to plan

modifications but does *not* apply § 1325(b). Period.").

Notably, Congress could have limited § 1329(a)(2)'s application to §§ 1322(a), 1322(b),

1323(c) and **1325—without specifying "the requirements of" and subsection "(a)", or leaving**

**out the term "requirements" and specifying both subsections (a) and (b); but it did not.** In

this same provision, Congress listed §§ 1322(a) and 1322(b); thereby, clearly expressing that both subsections (a) and (b) of 1322 apply to plan modifications. Furthermore, Congress specifically limited § 1329(a)(2)'s application to "Sections 1322(a), 1322(b) and 1323(c) of this title and **the requirements of section 1325(a)** of this title . . ." § 1329(b)(1) (emphasis added). As will be explained below, § 1325(a) sets forth the *requirements* for confirmation. Section 1325(b) is an *exception* to confirmation—not a requirement. Accordingly, "to force the incorporation where one does not exist would be inconsistent with congressional intent." *In re McCully*, 398 B.R. at 593.

The Trustee presents two arguments in support of her position that §1325(b) is incorporated into plan modifications through § 1325(a). First, the Trustee argues that § 1325(b) is incorporated into plan modifications by reference in the preface of § 1325(a). Section 1325(a) states, "(a) Except as provided in subsection (b), the court shall confirm a plan if—[.]" Second, the Trustee asserts that § 1325(a)(1) provides, "Except as provided in subsection (b), the court shall confirm a plan if – (1) the plan complies with the provisions of this chapter and with the other applicable provisions of this title." § 1325(a)(1). Thus, the Trustee asserts that because § 1325(b) is a provision of this chapter, it applies to plan modifications.

The Court disagrees. Both arguments are incorrect, as the Court will explain below, the express language of § 1325(b) does not apply to plan modifications.

<u>(iv) The Express Language of § 1325(b) Does Not Apply to Plan Modifications—Therefore, it is Not Made Applicable to Plan Modifications by Reference in §1325(a)</u>

Section 1325 addresses plan confirmation. Specifically, § 1325(a), which is referenced in §1329(b), sets forth the essential requirements for plan confirmation. This section specifically provides, "(a) Except as provided in subsection (b), the court shall confirm a plan if—" the nine listed requirements are satisfied.[2] § 1325(a). Section 1325(b) states,

---

[2] Section 1325(a) provides,

**(b)(1)** *If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan,* then the court may not approve the plan unless, as of the effective date of the plan--

**(A)** the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

**(B)** the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C.A. § 1325(b) (emphasis added).

---

(a) Except as provided in subsection (b), the court shall confirm a plan if--

(1) The plan complies with the provisions of this chapter and with the other applicable provisions of this title;

(2) any fee, charge, or amount required under chapter 123 of title 28, or by the plan, to be paid before confirmation, has been paid;

(3) the plan has been proposed in good faith and not by any means forbidden by law;

(4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date;

(5) with respect to each allowed secured claim provided for by the plan--

(A) the holder of such claim has accepted the plan;

(B)(i) the plan provides that--

(I) the holder of such claim retain the lien securing such claim until the earlier of--

(aa) the payment of the underlying debt determined under nonbankruptcy law; or

(bb) discharge under section 1328; and

(II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;

(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and

(iii) if--

(I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and

(II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or

(C) the debtor surrenders the property securing such claim to such holder;

(6) the debtor will be able to make all payments under the plan and to comply with the plan;

(7) the action of the debtor in filing the petition was in good faith;

(8) the debtor has paid all amounts that are required to be paid under a domestic support obligation and that first become payable after the date of the filing of the petition if the debtor is required by a judicial or administrative order, or by statute, to pay such domestic support obligation; and

(9) the debtor has filed all applicable Federal, State, and local tax returns as required by section 1308.

. . .

11 U.S.C.A. § 1325 (a).

The reference to §1325(b) in §1325(a) does not make §1325(b) applicable to modifications of a confirmed plan. *See In re Davis*, 439 B.R. at 867 (citing *Fridley v. Forsythe (In re Fridley),* 380 B.R. 538, 543 (9th Cir. BAP 2007); *Sunahara v. Burchard (In re Sunahara),* 326 B.R. 768, 781 (9th Cir. BAP 2005); *Forbes,* 215 B.R. at 191–92; *In re White,* 411 B.R. 268, 272–73 (Bankr. W.D.N.C.2008); *In re McCully,* 398 B.R. 590, 592–94 (Bankr. N.D. Ohio 2008); *In re Kidd,* 374 B.R. 277, 282 (Bankr. D. Kan.2007); *In re Ewers,* 366 B.R. 139, 141–42 (Bankr. D. Nev.2007)). This is because "*[t]he language of § 1325(b) itself does not apply to plan modification.*" *Id.* at 866 (emphasis in original).

There are two reasons. First, § 1325(b) by its terms only applies to plan confirmation, not plan modifications. Section 1329(b)(2) provides, "The plan as modified becomes the plan unless, after notice and a hearing, such modification is disapproved." *Id.* Therefore, modifying a confirmed plan does not involve another confirmation. This was succinctly summarized in *In re Davis*

> By its terms, § 1325(b) comes into effect only when a party with standing objects to "confirmation of the plan," and so the subsection only has direct application to plan confirmation. However, a plan is "confirmed" only once in a Chapter 13 case. Modifying a confirmed plan under § 1329 does not involve another "confirmation"; rather, § 1329(b)(2) simply provides that unless the court "disapproves" the modification, "the plan as modified becomes the plan." *See Forbes v. Forbes (In re Forbes),* 215 B.R. 183, 188 (8th Cir. BAP 1997) ("The Bankruptcy Code does not provide for the 'confirmation' of a modified plan; rather, the plan as modified becomes the plan if it is not disapproved."). Because the objection allowed by § 1325(b) applies only to confirmation of a plan, the terms of § 1325(b) itself do not apply to proposals to modify a previously confirmed plan.

*In re Davis*, 439 B.R. at 866.

Second, § 1325(b) is an *exception* to confirmation separate from the requirements mandated by § 1325(a). The language in § 1325(a) states, "(a) *Except as provided in subsection (b),* the court shall confirm a plan if—" the *nine listed requirements* are satisfied." *Id.* (Emphasis

added). *In re Davis* further clarifies the difference between the requirements—or prerequisites for confirmation—and an exception to confirmation,

> Section 1325(a) is a straightforward directive: "the court shall confirm a plan" if each of the nine statements thereafter set out in § 1325(a) applies to the case. These nine statements are indeed "requirements" for confirmation. A "requirement" is "a requisite or essential condition," *see* Webster's Third New International Dictionary 1929 (1981), and the application of each of the nine statements is a prerequisite for plan confirmation under § 1325(a), *see In re Jones,* 530 F.3d 1284, 1290 (10th Cir.2008) ("[T]he conditions specified in § 1325(a) are clearly mandatory requirements.").
>
> In contrast, § 1325(b) is not a "requirement." Rather than a prerequisite for confirmation, § 1325(b) is an exception to the confirmation that § 1325(a) otherwise mandates. Section 1325(a) states that courts must confirm a plan that meets its nine requirements; § 1325(b) has the potential for preventing that result. Nothing in § 1325(b) is required for confirmation. No party is required to object to confirmation under that subsection, and even if grounds for objection are present, a plan may be confirmed if the objection is not made. *See In re Storey,* 392 B.R. 266, 273 (6th Cir. BAP 2008) ("If no objection to confirmation is interposed, the plan may be confirmed regardless of 'the applicable commitment period.' "); *In re Braune,* 385 B.R. 167, 171 (Bankr.N.D.Tex.2008) ("[I]f no objection to confirmation is interposed, the plan may be confirmed whether or not it provides for full payment of creditors...."); *In re Tracey,* 66 B.R. 63, 65 (Bankr.D.Md.1986) ("Unlike the confirmation standards of § 1325(a), the ability-to-pay test may not be raised by the court *sua sponte* ....") The provisions of § 1325(b), then, are not part of the "requirements" of § 1325(a) made applicable to plan modification under § 1329(b)(1).

*In re Davis*, 439 B.R. at 867.

This interpretation of §§ 1325 and 1329 together is consistent and does not render other provisions inconsistent, superfluous, or meaningless. According to the plain language of both §§ 1325 and 1329, Congress intended § 1325(a)'s essential requirements for confirmation to apply to plan modifications. This is why "the requirements of § 1325(a)" are included in § 1329(b). Section 1325(b) is not an essential requirement for confirmation; rather, it is an exception to "confirmation" separate from the requirements of § 1325(a). Congress chose not to include § 1325(b) in § 1329(b).

12

The Court is not persuaded by the cases holding to the contrary. Trustee relies on *In re Keller*, *In re King*, and *In re Groner*. First, all three cases ignore the express language of § 1325(b). The Trustee's cases summarily conclude that § 1325(b) is referenced in § 1325(a) and therefore it must apply. That is the end of their analysis. They fail to analyze subsection (b) to determine its applicability. Significantly, "we must construe a statute as a whole and, in so doing, we must strive to interpret provisions so that other provisions in the statute are not rendered inconsistent, superfluous, or meaningless." *Chrysler Corp.,* 436 F.3d at 654-55. It is true that § 1325(a) incorporates § 1325(b), but it only makes § 1325(b) applicable in the context of plan confirmations. The express language of § 1325(b) only applies to confirmations. By its terms, it is not applicable to plan modifications.

Second, all three cases cited and relied on by the Trustee, while acknowledging that § 1325(b) is omitted in §1329, ignore the plain language of the relevant provisions, and instead focus their analysis on legislative history. See *In re King,* 439 B.R. at 134[3], *In re Keller*, 329 B.R. at 702,[4] and *In re Groner,* 2016 Bankr. LEXIS 1978 at *2. Notably, in turning to the legislative

---

[3] *In re King* contains several other arguments not addressed and analyzed by the Trustee, including (1) § 1329(c)'s reference to § 1325(b)(1)(B) and (2) a restrictive reading of § 1329 would render § 521(f) virtually meaningless. As a result, the Court will not address these arguments directly; however, the Court notes that its discussion regarding the applicable commitment period contained in section IV(c)(ii) of this opinion is relevant to these arguments.

[4] While *In re Keller,* 329 B.R. at 703 discusses § 1329, the section was not at issue as the debtors in that case did not file a request to modify their plan. There, the issue was "whether it is permissible to pay off a chapter 13 plan within a significantly shorter period of time than required by the confirmed plan." *Id.* at 699. In fact, the holding in *In re Keller* is inconsistent with its discussion of §1329. *In re Keller* provided that "The omission of section 1325(b) from section 1329(b) should not be taken to mean that section 1325(b) is not applicable to modified plans[,]" and nonetheless held

> So, the debtors in this case have a choice. Their motion to borrow will be approved but if they also wish to complete their confirmed plan with an accelerated lump sum payment, it must be sufficient to pay unsecured claims in full. Alternatively, assuming the debtors are able to convince the court that, given their particular economic circumstances, **payments for less than 3 years without paying unsecured claims in full satisfies section 1325(a)(3), they must modify their plan**.

*Id.* at 703. (Emphasis added). Thus, the *Keller* court contemplates that the debtors could shorten their plan payments without paying unsecured claims in full provided they modify their plan and convince the court their circumstances warrant such modification.

history for their analysis, these cases only focus on the history and purpose of § 1325(b) and do not address the legislative purpose of § 1329—which is the governing statute for plan modifications. Nevertheless, the first step in statutory construction "is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Veneman*, 383 F.3d at 481. "Only when our reading results in ambiguity or leads to an unreasonable result, may we look to the legislative history." *Id.* Here, there is no ambiguity that § 1329 omits §1325(b). Furthermore, there is no ambiguity that § 1325(b), by its terms, only applies to objections to confirmation. Lastly, there is no ambiguity that § 1325(b) is an exception to confirmation, not a requirement for confirmation.

Third, the Trustee's cases criticize the majority's reliance on the good faith requirement of § 1325(a)(3) to insure no absurdity results from allowing modification of a confirmed Chapter 13 plan without applying § 1325(b). *In re Keller* points out that "section 1325(b) was added to the Bankruptcy Code in 1984 because of a spate of discordant judicial opinion concerning whether the good faith clause imposes minimum debt-repayment requirements as prerequisites to the confirmation of chapter 13 plans." *In re Keller,* 329 B.R. at 702 (internal quotation marks and citations omitted). See also *In re King,* 439 B.R. at 136 and *In re Groner,* 2016 Bankr. LEXIS 1978 at *2.

Importantly, Congress chose to make plan modifications subject to the good faith requirement of § 1325(a)(3). While the Court agrees with the purpose of enacting §1325(b), and its applicability to plan confirmations, Congress chose not to make it applicable to plan modifications. It is the Court's job to interpret the statute as written. Because there is no ambiguity

or absurdity in the Court's interpretation of the statute, the Court's inquiry is at its end. The Court cannot look to legislative history to create an ambiguity.

Finally, the Trustee's cases erroneously conclude that if § 1325(b) is not incorporated by reference into § 1329 through the preface of § 1325(a), it applies by virtue of §1325(a)(1), which requires that a plan comply with the provisions of chapter 13 and other applicable provisions of the Bankruptcy Code. See *In re King*, 439 B.R. at 135. This interpretation would render § 1329(b)(1) meaningless, as there would be no reason for Congress to designate the four applicable code sections, if plan modifications were subject to all the provisions of chapter 13 and other applicable provisions of this title. As a result, this cannot be the correct interpretation. And again, § 1325(b), by its terms, is inapplicable to plan modifications. Accordingly, the Court's interpretation is consistent and does not render the other provisions superfluous and meaningless.

### (v) No Absurdity Results from the Inapplicability of § 1325(b) to Plan Modifications

The Court further concludes that no absurdity results from the inapplicability of § 1325(b) to plan modifications. "The continued applicability of the good faith requirement to the payment amounts and plan length proposed in a modification of a Chapter 13 plan, regardless of the party proposing the modification, results in a procedure free from absurdity, while honoring Congress's decision not to make § 1325(b) part of the procedure." *In re Davis*, 439 B.R. at 869. See also *In re Swain*, 509 B.R. at 31 ("there are other code provisions available to prevent improper plan modifications and specifically noted that the good faith requirement of § 1325(a)(3) applies to plan modifications"). Accordingly, "[i]t is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Lamie v. U.S. Tr.,* 540 U.S. 526, 534, 124 S.Ct. 1023, 1030,

157 L. Ed. 2d 1024 (2004) (quoting *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000)).

Moreover, "[t]he incorporation of § 1325[(b)] into § 1329 would also hinder the debtor from making necessary modifications and thus, could not effectively carry out the purpose of § 1329." *In re McCully*, 398 B.R. at 594. The court explained that "[t]he legislative history suggests that the purpose of § 1329 is to '[allow] upward or downward adjustment of plan payments in response to changes in the debtor's financial circumstances which affect his/her ability to make payments.'" *Id.* (internal citation omitted). Additionally, the incorporation of § 1325(b) into § 1329 would render § 1329(b) superfluous and meaningless.

### c. Section 1327 - Debtor is Not Relitigating an Issue that Was or Could Have Been Litigated at Confirmation

#### (i) Parties' Arguments

The Trustee argues that pursuant to *In re Ellison*, 620 B.R. 594 (Bankr. E.D. Mich 2020), the Debtor "cannot relitigate an issue that was or could have been litigated at confirmation as it violates 11 U.S.C. § 1327." [ECF No. 48, pg. 1]. Here, according to Debtor's Statement of Current Monthly Income (form 122C-1) Debtor was above the median income six months prior to filing. The median income for a household of two was $69,789.00, Debtors income was $71,928.00. At the time of confirmation, Debtor experienced a reduction in income to $57,264.00, below the median income. "Even with the reduction of income at the time of confirmation, the Debtor confirmed a five (5) year plan." [ECF No. 48, pg. 1]. The Trustee maintains that the Debtor cannot argue for a plan modification when the same events existed prior to confirmation. Such a plan modification does not comply with § 1325(a)(1) and should not be approved.

The Trustee also contends that the "applicable commitment period" is a temporal requirement for the length of the plan citing to *Baud v Carroll*, 634 F.3d 327 (6th Cir 2011) and

*Whaley v Tennyson (In re Tennyson)*, 611 F.3rd 873, 879 (11th Cir 2010). The applicable commitment period is not a mathematical determination that begins and ends at the time of confirmation. Finally, the Trustee states that this approach "is also supported by the spirit of chapter 13 which is for Debtors to provide the greatest recovery for creditors while the debtor seeks a fresh start." [ECF No. 50, pg. 6]. Otherwise, the CMI would be pointless, and creditors could not determine their recovery during the plan. The only way to shorten the length of the plan is to pay 100% to unsecured creditors.

In response, the Debtor asserts that he could not have requested a deviation from the applicable commitment period at confirmation as § 1325(b) doesn't allow for such a deviation. [ECF No. 60, Tr. Feb. 27, 2025, pg. 7]. The applicable commitment period is determined by the calculation of current monthly income which is based on the six months preceding commencement of the bankruptcy case. Accordingly, the Debtor maintains that any change in his income post-petition would not change the applicable commitment period under § 1325(b).

Next, Debtor maintains that *Carroll* supports his position as the debtors in *Carroll* were "above median income six months preceding commencement of the case and, therefore, would have a 60-month applicable commitment period." [ECF No. 60, Tr. Feb. 27, 2025, pg. 8-9]. The debtors however, had no disposable income, and argued that "they didn't have to be in a 60-month plan[.]" *Id*. The Sixth Circuit disagreed and held that "[t]he plan length is determined by current monthly income and the applicable commitment period and that's it. And there was no way to argue that at confirmation because that didn't change." *Id*. Thus, the Debtor asserts that the parties "are not litigating for purposes of determining the applicable commitment period because that is a pre-petition calculation." [ECF No. 60, Tr. Feb. 27, 2025, pg. 12]. At the February 27, 2025

hearing, Debtor further argued that per *Hamilton v. Lanning,* 560 U.S. 505, 130 S.Ct. 2464, 2469, 177 L.Ed.2d 23 (2010) cited in *Carroll,*

> we can consider post-petition changes in income that are known or virtually certain in determining disposable income, that is, in determining the plan payment, but not the applicable commitment period. And that's what we would litigate frequently was post-petition changes in income and expenses that were known or virtually certain.

[ECF No. 60, Tr. Feb. 27, 2025, pg. 12].

Furthermore, Debtor argues that because he is no longer above median income, a reduction in the length of the plan is warranted. However, at the time the petition was filed the Debtor was an above median income Debtor, and there is no post confirmation CMI form that the Debtor can fill out to change debtor's status from above median to below median. Debtor further contends that the plan modification does not violate the spirit of Chapter 13. The Debtor's plan modification complies with § 1325(a)(4), the best interests of the creditors. The plan provided for 0% to unsecured creditors, and the filed claims have received a 30% dividend. In other words, unsecured creditors have received more than was required. [ECF No. 52, pg. 4].

At the February 27, 2025 hearing, the Trustee confirmed that she would have objected if, at confirmation, the Debtor had proposed a 36-month plan based on post-petition and pre-confirmation changes in income. [ECF No. 60, Tr. Feb. 27, 2025, pgs. 20-21].

### (ii) *Carroll, In re Tennyson*, and *Lanning* Held that the Applicable Commitment Period is a Temporal Requirement in the Context of Plan Confirmation

The applicable commitment period is defined in § 1325(b)(4). *Carroll, In re Tennyson*, and *Lanning* conclude that the applicable commitment period is a temporal requirement. These cases, however, analyze § 1325(b) in the context of plan confirmation. Notably, the Sixth Circuit in *Carroll* noted

Post–BAPCPA decisions adopting the monetary approach in which the courts point to pre-BAPCPA practice in support of their position rely on cases decided in the context of plan modification or early-payoff, not confirmation. *See Fuger,* 347 B.R. at 97–101; *Swan,* 368 B.R. at 25. By contrast, as discussed above, pre-BAPCPA decisions addressing plan confirmation support the temporal approach.

*Carroll*, 634 F.3d at 342.

The Court already concluded that § 1325(b) is inapplicable to plan modifications. While the applicable commitment period is a temporal requirement in the context of plan confirmation, Congress still chose to allow debtors to modify the time for plan payments if the requirements of § 1329 are satisfied.

(iii) Section 1327 and *In re Ellison*, 620 B.R. 594 (Bankr. E.D. Mich. 2020)

As stated, plan modifications are subject to § 1325(a)(1). This section provides, "**(a)** Except as provided in subsection (b), the court shall confirm a plan if-- **(1)** The plan complies with the provisions of this chapter and with the other applicable provisions of this title[.]" § 1325(a)(1). Here, the relevant provision is § 1327, which provides, "The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." § 1327(a).

*In re Ellison* held that "[a] plan modification that attempts to relitigate an issue that was litigated at confirmation or could have been litigated at confirmation, does not comply with § 1327." *In re Ellison,* 620 B.R. at 602. Consequently, "[i]f a plan modification does not comply with § 1327, it follows that it does not comply with § 1325(a)(1) and therefore cannot be approved because it does not meet the requirements of § 1329(b)." *Id.* There, the court held that the plan modification attempted to relitigate an issue that could have been litigated at confirmation. Specifically, the Court reasoned that,

The Plan Mod states that because the Debtor is a below median income debtor, with an ACP of 36 months, there was "no real cause" for the Court to have approved at

19

confirmation a plan with a length of 60 months under § 1322(d). The Debtor requests that the Court now come to a different conclusion about "cause" under § 1322(d) than it did at the time of confirmation. The problem with the Debtor's request is that the Plan states on its face — consistent with the Debtor's own statement of current monthly income — that the Debtor is a below median income debtor with an ACP of 36 months. This fact was plainly disclosed and known to all parties — including the Debtor's attorney — at the time of confirmation. If there was any issue regarding whether the Court had "cause" under § 1322(d)(2) to approve a 60 month plan for the Debtor, as the Debtor is now suggesting, that issue could certainly have been raised and litigated at the time of confirmation. It was not.

*Id.* at 602–03.

Unlike *In re Ellison,* the Debtor in the case at bar was an above median income debtor and, therefore, could not have argued for a shorter applicable commitment period at the time of confirmation. Debtor was required to confirm a 60-month plan. In addition, there is a post confirmation change in facts as Debtor's income has decreased and his expenses are increased. The debtor in *In re Ellison*, on the other hand, could have confirmed a 36-month plan because she was a below median income debtor. But, for whatever reason, that debtor proposed a 60-month plan at confirmation. There was no post-confirmation change in that debtor's financial circumstances, she simply wanted to modify the plan length based on the same facts that existed at her confirmation.

The applicable commitment period is based on pre-petition income; as a result, any post-petition and pre-confirmation changes in income do not affect the applicable commitment period. The "applicable commitment period" is defined in § 1325(b)(4) as follows,

**(4)** For purposes of this subsection, the "applicable commitment period"--
**(A)** subject to subparagraph (B), shall be--
**(i)** 3 years; or
**(ii)** not less than 5 years, if the current monthly income of the debtor and the debtor's spouse combined, when multiplied by 12, is not less than--
**(I)** in the case of a debtor in a household of 1 person, the median family income of the applicable State for 1 earner;

**(II)** in the case of a debtor in a household of 2, 3, or 4 individuals, the highest median family income of the applicable State for a family of the same number or fewer individuals; or

**(III)** in the case of a debtor in a household exceeding 4 individuals, the highest median family income of the applicable State for a family of 4 or fewer individuals, plus $925 [originally "$525", adjusted effective April 1, 2025][1] per month for each individual in excess of 4; and

**(B)** may be less than 3 or 5 years, whichever is applicable under subparagraph (A), but only if the plan provides for payment in full of all allowed unsecured claims over a shorter period.

§ 1325(b)(4). "Current monthly income," in turn, as defined

(A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on--
(i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income required by section 521(a)(1)(B)(ii); or
(ii) the date on which current income is determined by the court for purposes of this title if the debtor does not file the schedule of current income required by section 521(a)(1)(B)(ii); and
(B)(i) includes any amount paid by any entity other than the debtor (or in a joint case the debtor and the debtor's spouse), on a regular basis for the household expenses of the debtor or the debtor's dependents (and in a joint case the debtor's spouse if not otherwise a dependent); and

11 U.S.C.A. § 101(10A). Also, Official Form 122C directs debtors to look to income "derived during the 6 full months before you file this bankruptcy case" to determine current monthly income and the calculation of the commitment period. Finally, at the February 27, 2025 hearing, the Trustee confirmed that she would have objected if, at confirmation, the Debtor had proposed a 36-month plan based on post-petition and pre-confirmation changes in income. [ECF No. 60, Tr. Feb. 27, 2025, pgs. 20-21].

Accordingly, Debtor's post-petition and pre-confirmation changes in income could not have been litigated at confirmation for purposes of determining the applicable commitment period. Therefore, the Debtor's plan modification does not violate § 1327.

Additionally, the Debtor's plan modification does not violate § 1327 because the Debtor had a further reduction in income post plan confirmation, from $3,514.00 per month to $2,964.39 per month. Also, Debtor had a new post-confirmation housing expense of $845.00. This reduction in income and increase in expenses provides a post-confirmation change in facts to permit a plan modification.

### d. Application of § 1325(a) to Debtor's Proposed Plan Modification

(i) Parties' Arguments

Next, Debtor argues that the proposed plan modification is feasible and filed in good faith. [ECF No. 43, pgs. 8-13]. Regarding feasibility, Debtor has filed amended Schedules I and J that the Trustee has not challenged. Despite Debtor's job loss and new rental expense of $845.00, the monthly budget has only increased by $95.00. The Debtor maintains that the plan modification is feasible. In fact, if the Debtor were to file the plan today on the terms requested in the plan modification, the plan would be confirmable. Finally, the Debtor argues that after a review of the totality of the circumstances in *In re Alt*, 305 F.3d 413, 419 (6th Cir. 2002), he has demonstrated good faith. [ECF No. 43, pg. 9].

Trustee asserts that the Debtor has not provided a reason for the plan modification from 60 months to 36 months as required by §§ 1329(b)(1) and 1325(a)(3). The Trustee further questions "[w]hy would the debtor not be able to make an additional $100 payment for 42 months? The debtor has been making the $746 payment even after the debtor was terminated for the last six months." [ECF No. 60, Tr. Feb. 27, 2025, pg. 17]. The unsecured creditors expected to receive $31,000 at confirmation and have only received $8,540. [ECF No. 48, pg. 2]. Accordingly, the requested plan modification lacks good faith, citing *Metro Employees Credit Union v. Okareeh-Baah* (*In re Okareeh-Baah*), 836 F.2d 1030, 1033 (6th Cir.1988).

In reply, the Debtor maintains that the Trustee's position would prevent any reduction in the plan term. "If the only time a debtor could reduce the time plan term would be if Debtor cannot make any payments, then § 1329(a)(2) is eviscerated. Debtor cannot lack good faith for asking to do exactly what the Code allows." [ECF No. 52, pg. 6]. The Debtor further highlights that he was terminated from his second job and decided to adjust his expenses to continue making plan payments. Debtor could have dismissed the case and filed for a Chapter 7 discharge. The Debtor explains that

> [He] doesn't own anything. He didn't at the time this case was filed. He still doesn't. He could just as easily dismiss this case and file a Chapter 7 tomorrow and pay nobody anything. But he doesn't want to do that. He, for reasons of his own, he feels an obligation to do his best and he's willing to do that, but he, beyond -- to try and push that beyond another 18 months just isn't warranted under the -- under 1329. It isn't probably long-term feasible.

[ECF No. 60, Tr. Feb. 27, 2025, pg. 16]. Furthermore, "[t]he liquidation value of the estate and the plan at ECF 2, Page 8 has a zero percent liquidation analysis. That is the amount that 1325(a) requires be paid to creditors. We've already paid almost 29 percent to unsecured creditors[.]" [ECF No. 60, Tr. Feb. 27, 2025, pg. 13-14]. Finally, Debtor claims that if he "were to file a plan today on the terms of the modification, the plan would be confirmable." [ECF No. 60, Tr. Feb. 27, 2025, pg. 14]. Thus, the Debtor contends that the plan modification is feasible and filed in good faith.

### (ii) Debtor's Proposed Plan Modification is Feasible and Filed in Good Faith

The Court concludes that Debtor's proposed plan modification is feasible and filed in good faith. Preliminarily, the Court notes that contrary to the Trustee's assertion, Debtor provided a reason for requesting a reduction in the time to make plan payments—a decrease in income and a new housing expense due to the loss of Debtor's second employment. In addition, Debtor is now a below median income debtor who satisfies the requirements of § 1329.

Pursuant to § 1329, § 1325(a) is applicable to plan modifications, including the requirement that "the plan has been proposed in good faith and not by any means forbidden by law[.]" § 1325(a)(3). The only requirement of § 1325(a) at issue is § 1325(a)(3). *In re Alt* summarized the standard for determining whether a debtor's plan is proposed in good faith pursuant to § 1325(a)(3),

> As a starting point, the bankruptcy code requires that, in order to be confirmed, a debtor's plan must, among other things, be "proposed in good faith." 11 U.S.C. § 1325(a)(3). In that context, "[o]ur circuit's good faith test requires consideration of the totality of circumstances." *Society Nat'l Bank v. Barrett (In re Barrett),* 964 F.2d 588, 591 (6th Cir.1992) (citations omitted). Among the circumstances to be considered in determining whether a plan has been proposed in good faith are the following:
>
> (1) the debtor's income;
> (2) the debtor's living expenses;
> (3) the debtor's attorney's fees;
> (4) the expected duration of the Chapter 13 plan;
> (5) the sincerity with which the debtor has petitioned for relief under Chapter 13;
> (6) the debtor's potential for future earning;
> (7) any special circumstances, such as unusually high medical expenses;
> (8) the frequency with which the debtor has sought relief before in bankruptcy;
> (9) the circumstances under which the debt was incurred;
> (10) the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt;
> (11) the burden which administration would place on the trustee;
> (12) the statutorily-mandated policy that bankruptcy provisions be construed liberally in favor of the debtor.
>
> *See id.* at 592. We have also emphasized that good faith is a fact-specific and flexible determination. *See Metro Employees Credit Union v. Okoreeh–Baah (In re Okoreeh–Baah),* 836 F.2d 1030, 1032–33 (6th Cir.1988).[5]

---

[5] The Sixth Circuit in *In re Okoreeh-Baah*, 836 F.2d 1030, 1033 (6th Cir. 1988) explains that

> Good faith is an amorphous notion, largely defined by factual inquiry. In a good faith analysis, the infinite variety of factors facing any particular debtor must be weighed carefully. We cannot here promulgate any precise formulae or measurements to be deployed in a mechanical good faith equation. The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.

*In re Okoreeh-Baah*, 836 F.2d at 1033.

*In re Alt*, 305 F.3d at 419. Moreover,

> In considering whether a proposed modification comports with § 1325(a)(3) good faith requirement, it is appropriate for the Court to consider the standards of § 1325(b), *In re Stein*, 91 B.R. at 800, despite the fact that § 1329(b) does not specifically incorporate the "ability to pay"/"projected disposable income test" of § 1325(b). *See In re Hill*, 386 B.R. at 676. Judge Colton has described the relevancy of the ability to pay standard in the context of a modification, thus:

> Congress intended chapter 13 plans to be modifiable based on a debtor's increased or decreased "ability to pay" during the life of the plan. This "ability to pay" standard authorizes chapter 13 plan modifications *regardless or whether the new found ability to pay constitutes "disposable income" within the meaning of section 1325*. An inheritance, a personal injury claim, even lottery winnings–all can be the basis of an upward modification of a confirmed chapter 13 plan.

> *In re Roscoe*, No. 8:13-BK-06517-RCT, 2017 WL 2839496, at *2 (Bankr. M.D. Fla. June 28, 2017) (emphasis added). Accordingly, "§ 1329's focus [is] on a debtor's actual, post-confirmation income and expenses." *In re Prieto*, No. 308BK3308PMG, 2010 WL 3959610, at *3 (Bankr. M.D. Fla. Sept. 22, 2010), *see also In re Wetzel*, 381 B.R. 247, 252 (Bankr. E. D. Wis. 2008) ("Although the disposable income test does not explicitly apply, courts have recognized that the 'debtor's changed income and expenses are factored into the bankruptcy court's good judgment and discretion.' ") (quoting *In re Sounakhene*, 249 B.R. 801 (Bankr. S.D. Cal. 2000)). By incorporating the "ability to pay" analysis under § 1325(b) to a modified plan, "the Court's good faith inquiry should include a review of a debtor's proposed monthly budget." *In re Stein*, 91 B.R. at 801.

*In re Scholl*, 605 B.R. 163, 182–83 (Bankr. S.D. Ohio 2019). Finally, the proponents of a modification have the burden of proof under §§ 1325(a) and 1329." *In re Scholl,* 605 B.R. at 187.

Turning to the *In re Alt* factors, the Court first concludes that the first factor—the debtor's income—weighs in Debtor's favor. There is no dispute that Debtor's monthly income reduced from $3,514.00 to $2,964.39 due to an involuntary loss of his second employment. Here, Trustee argues that while Debtor's income is reduced, it is possible that this reduction is temporary, as the

Debtor could obtain a second job. The Trustee's assertion is speculative and not based on any facts before the Court.

The Court concludes that the second factor regarding Debtor's living expenses favors the Debtor. The Debtor has a very tight budget and is doing his best to pay his creditors. Debtor maintains that his termination from his second job was involuntary and amounted to 37% of his monthly net income. In addition, Debtor has adjusted his budget to accommodate his new housing expense of $845.00 per month. The $845.00 cost has only resulted in an overall $95.00 increase in his budget. The Trustee does not comment on the Debtor's budget but notes that Debtor has a 100% payment history, even since the loss of his second job. Thus, it is "highly likely" Debtor could contribute more funds to pay his creditors. Debtor argues that going beyond another 18 months is not warranted and probably not feasible long term. Clearly, the Debtor is doing his best to pay his creditors. The housing expense should have caused Debtor's expenses to exceed his income. Instead, with belt tightening, Debtor has succeeded in proposing a plan that is feasible. Furthermore, he is contributing 100% of his disposable income.

The third factor concerning debtor's attorney fees weighs in Debtor's favor. Here, Trustee contends that if the Debtor is allowed to reduce the time of the plan, all remaining payments made by the Debtor will likely be used to pay attorney fees with no payments for the creditors. Debtor provides that his counsel has received $3,500.00 and unsecured creditors have received $11,021.16, and anything else they receive in the time remaining if the plan time is reduced. Even if unsecured creditors do not receive more payments, they received more than the -0- provided for in the liquidation analysis. Furthermore, plan payments will continue to be disbursed according to the dictates of the Bankruptcy Code.

The fourth factor regarding the expected duration of the Chapter 13 plan weighs in Debtor's favor. The plan has run 18 months and would run a total of 36 months with the modification. Debtor argues that shortening the plan to 36 months cannot lack good faith when it is permitted by § 1329(b). Debtor emphasizes that he could dismiss the case and file for relief under Chapter 7 to avoid paying creditors, but he instead seeks to pay more to creditors, even if for a shorter period of time. The Trustee, however, argues that the creditors were expecting payments of about $31,000 and only $8,540 has been paid by the Debtor. A reduction in the length of the plan will likely end payments to the unsecured creditors. The Court notes that the liquidation analysis is zero percent to unsecured creditors. Unsecured creditors already have received 29 percent, more than what was required by the liquidation analysis. Additionally, Debtor has engaged in significant belt tightening to have any disposable income for plan payments.

The fifth factor addressing the sincerity with which the debtor has petitioned for relief under Chapter 13 favors the Debtor. The Debtor is sincere and doing his best to pay his creditors. As stated, the unsecured creditors have been paid more than they would receive in a Chapter 7, and Debtor is willing to continue making payments. Trustee contends that if the Debtor is permitted to reduce the plan length, it "would make a mockery of honest, hardworking, well intended debtors who pay a higher percentage of their claims consistent with the purpose and spirit of Ch 13." [ECF No. 50 pg. 10]. The Court disagrees. The record before the Court shows that the Debtor is honest, hardworking and trying to pay his creditors to the best of his ability.

The sixth factor is the debtor's potential for future earnings. This factor is neutral. No evidence was provided regarding the Debtor's earning potential.

Factors seven through nine were not addressed by the parties. Given the record in this case, the Court finds these factors not relevant.

The tenth factor addressing the amount of payment offered by debtor as indicative of the debtor's sincerity to repay the debt favors the Debtor. Debtor's loss of his second employment resulted in an additional housing expense. Despite this $845.00 per month expense, his overall expenses increased by only $95.00 per month. The Debtor has a very tight budget and commits all of his disposable income. As noted, Debtor could have easily dismissed this case and sought a chapter 7 discharge. The Debtor is sincere in repaying his debt.

The eleventh factor, the burden which administration would place on the trustee, was not addressed by the parties.

Lastly, the twelfth factor regarding the statutorily mandated policy that bankruptcy provisions be construed liberally in favor of the debtor favors the Debtor. Here, Debtor maintains that completing the Chapter 13 and receiving a discharge fulfills the Congressionally mandated policy of granting an honest but unfortunate debtor a chance to obtain a discharge. The Court agrees.

After analyzing the relevant factors, the Court concludes that the Debtor has proposed his plan modification in good faith.

## V. CONCLUSION

For the foregoing reasons, the Court concludes that § 1325(b) is inapplicable to plan modifications. The Court further holds that the Debtor's plan modification does not relitigate an issue that was or could have been litigated at confirmation, and thus, does not violate § 1327. Finally, the Court holds that the Debtor's proposed plan modification is feasible and filed in good faith, and otherwise complies with § 1325(a)(3).

**Signed on May 22, 2025**



/s/ Maria L. Oxholm

**Maria L. Oxholm**
**United States Bankruptcy Judge**